Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-11-00420-CR

Ricardo L. **HERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR7940
Honorable Laura Parker, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  November 14, 2012

AFFIRMED

Ricardo Hernandez was convicted by a jury of capital murder and was sentenced to life in prison without parole. On appeal, Hernandez challenges the admission of his confession, asserting that he did not voluntarily, knowingly, and intelligently waive his rights under Article 38.22 of the Texas Code of Criminal Procedure and *Miranda v. Arizona*. Additionally, Hernandez contends that the trial court erred in reading back to the jury portions of testimony,

claiming no dispute existed as is required under Article 36.28 of the Texas Code of Criminal Procedure. We overrule Hernandez's challenges and affirm the trial court's judgment.

## BACKGROUND

On April 25, 2009, the Bexar County Sheriff's Department was dispatched to a shooting that occurred at a trailer park in Northwest San Antonio. The victim of the shooting, Glen Butler, was taken to the hospital and died shortly thereafter. Detective David Davila was the lead investigator assigned to the case. After arriving at the scene, Detective Davila spoke with Charlie and Dewayne Jones, the men with whom Butler resided. The brothers told police that three intruders forcibly entered their residence, and they identified Ricardo Hernandez as one of the intruders. The Joneses also told officers Hernandez lived nearby in the trailer park and was driving a white car when he fled the scene.

After speaking with Hernandez's girlfriend's mother, with whom Hernandez lived, Detective Davila temporarily left the trailer park to locate the home of Hernandez's mother. Shortly thereafter, Hernandez and his girlfriend returned to the trailer park, and Hernandez was taken into custody by other officers. Upon Detective Davila's return to the trailer park, Detective Davila was informed that Hernandez had already received *Miranda* warnings. Nevertheless, Detective Davila had Hernandez *Mirandized* again in his presence. After providing a statement at the crime scene, Hernandez was taken to the police station to have his statement recorded.

Upon arrival at the Sheriff's Department, but before taking Hernandez's recorded statement, Detective Davila gave Hernandez the warnings required by Article 38.22 of the Code of Criminal Procedure. Hernandez orally acknowledged understanding each warning individually and initialed next to each warning on a written copy he was provided. He then

signed the written document entitled "Miranda," certifying that he understood his rights and the consequences of waiving such rights.

Prior to trial, Hernandez filed a "Motion to Suppress Written or Oral Statements of the Defendant," seeking suppression of the oral statements made by Hernandez to Detective Davila during the interview at the Sheriff's Department. Hernandez's motion to suppress claimed, among other things, that his confession was involuntary and taken in violation of the Fifth Amendment of the United States Constitution and Article 38.22 of the Texas Code of Criminal Procedure. The trial court held a hearing and denied Hernandez's motion. Detective Davila was the sole witness to testify at the suppression hearing.

ADMISSIBILITY OF THE STATEMENT

Hernandez does not dispute that proper warnings were given in accordance with Article 38.22 of the Code of Criminal Procedure and *Miranda*, nor does he contend that such warnings were not understood. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005); *Miranda v. Arizona*, 384 U.S. 436 (1966). Instead, Hernandez claims he did not knowingly, intelligently, and voluntarily waive his rights.

### A. Standard of Review

An appellate court reviews the ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Hodson v. State*, 350 S.W.3d 169, 173 (Tex. App.—San Antonio 2011, pet ref'd). We defer to the trial court's determinations on historical facts and credibility, but we review de novo questions of law and mixed questions of law and fact not turning on credibility assessments. *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011); *Carmouche*, 10 S.W.3d at 327. Viewing the evidence in the light most favorable to the trial court's ruling, we will uphold the ruling if it is correct

under any theory of law applicable to the case. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

### B. Waiver

The State bears the burden of establishing a knowing, intelligent, and voluntary waiver of one's rights under *Miranda* and Article 38.22. *Miranda*, 384 U.S. 436; *Leza*, 351 S.W.3d at 349, 351; *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). Waiver must be proven by a preponderance of the evidence. *Miranda*, 384 U.S. 436; *Leza*, 351 S.W.3d at 349, 351; *Joseph*, 309 S.W.3d at 24. Without a valid waiver, a defendant's statement is generally inadmissible. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010); *Joseph*, 309 S.W.3d at 24. In determining whether there was a valid waiver of Hernandez's rights we must look to the totality of the circumstances, "including the background, experience, and conduct of the accused." *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979); *see Leza*, 351 S.W.3d at 349, 352–53; *Joseph*, 309 S.W.3d at 25.

A waiver can be expressly made or implied by the accused's conduct. *Berghuis*, 130 S. Ct. at 2261; *Joseph*, 309 S.W.3d at 24. An implied waiver of one's rights is established upon a showing that the accused: (1) was given the proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement. *Berghuis*, 130 S. Ct. at 2260–62; *see Moran v. Burbine*, 475 U.S. 412, 422–23 (1986); *Leza*, 351 S.W.3d at 349. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 130 S. Ct. at 2262.

While it is true that a waiver cannot be presumed from an accused's silence or the fact that a confession was made after warnings were provided, "the general rule is that neither a

written nor an oral express waiver is required." *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988) (en banc). Simply making a statement is often the kind of conduct viewed as indicative of one's intention to waive her rights. *See Berghuis*, 130 S. Ct. at 2262; *Leza*, 351 S.W.3d at 348; *Joseph*, 309 S.W.3d at 25 n.7. This relatively low threshold for establishing waiver is because "[t]he main purpose of *Miranda* is to ensure that an accused is *advised of and understands* the right to remain silent and the right to counsel." *Berghuis*, 130 S. Ct. at 2261 (emphasis added).

Much like the appellant in *Joseph v. State*, Hernandez willingly shared his version of the events with Detective Davila immediately after receiving and acknowledging his understanding of the warnings. *Joseph*, 309 S.W.3d at 26. At no time did Hernandez ask to stop the interview or ask for counsel. Furthermore, Hernandez makes no allegations of coercion, nor does he dispute Detective Davila's statement that he was given *Miranda* warnings three times. Additionally, there is no contention that Hernandez did not understand the warnings. In fact, when Hernandez was taken to the police station and read the warnings mandated by Article 38.22—which substantively include all of the *Miranda* warnings—he verbally acknowledged understanding each one, contemporaneously initialing next to each warning on a written document. Hernandez was also given an opportunity to ask any questions he may have had. After signing the warnings at the police station, Hernandez essentially provided a narrative with very few interruptions by Detective Davila. The lack of poignant questioning by Detective Davila coupled with Hernandez's prolonged statement indicates an intention to voluntarily waive his rights. Moreover, Hernandez had already made multiple statements to officers prior to arriving at the Sheriff's Department but subsequent to receiving *Miranda* warnings, evidencing his willingness to speak with the police.

The recording does show Hernandez asking questions about whether he had been charged and whether he had to write a statement. However, Detective Davila immediately clarified that he did not have to make a statement and that he was charged with unlawfully entering the residence where Butler lived. In addition, before proceeding, Detective Davila asked several times whether Hernandez was willing to continue the interview.

> **Hernandez:** Umm, I was gonna say, umm, if I'm already charged then what am I doing here? You know, and honestly, if I have to write a statement like it said . . .

> **Detective Davila:** No, you don't have to write a statement. No sir, no. This is, you know, you're going to be interviewed, you know, as I told you, you know. This is a right you have; you can refuse to be interviewed. You know, I just want to hear your part, like you told me out there. Okay, that's all, what happened tonight. Are you okay with that?"

> **Hernandez:** Well yeah, I was kind of okay, but honestly, if . . . the whole thing I don't understand is why did I get charged then? If I'm just here doing a statement, then why am I charged?

> **Detective Davila:** Okay, you're charged with where you went to the house. Okay?

> **Hernandez:** Yes, sir.

> **Detective Davila:** And from what witnesses said. I want to hear your part. This is the time you get the chance to tell me your part [of] what happened today. Are you willing to do that?

> **Hernandez:** Yeah. [nodding head]

Hernandez then began his statement, which was almost entirely free of questioning or interruptions. Although the recording of the interview shows Hernandez was possibly uncertain about the charge for which he was being held, the United States Supreme Court and the Court of Criminal Appeals have concluded that statements will not be deemed involuntary merely because questioning is based on a crime different than that for which the suspect has been arrested.

*Colorado v. Spring*, 479 U.S. 564, 577 (1987); *Leza*, 351 S.W.3d at 350, 352 (emphasizing that officers warned the appellant that *anything* he said could be used against him).

Hernandez points out that subsection 3(e) of Article 38.22 requires subsection 3(a) to be strictly construed and alleges that the finding of an implied waiver of the rights set forth in Article 38.22 is in contravention of this mandate. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a), (e). Such an interpretation would effectively require an express waiver, which has been consistently rejected by the United States Supreme Court and the Court of Criminal Appeals. *Berghuis*, 130 S. Ct. at 2261; *Butler*, 441 U.S. at 374–75; *Joseph*, 309 S.W.3d at 24; *Watson*, 762 S.W.2d at 601. Although implied waivers are not preferred under Texas law, a trial court does not abuse its discretion when an implied waiver finding is supported by the totality of the circumstances. *Leza*, 351 S.W.3d at 353; *Joseph*, 309 S.W.3d at 29–30 (Cochran, J., concurring); *Watson*, 762 S.W.2d at 601.

After considering the totality of the circumstances, we hold that the trial court did not abuse its discretion in finding a voluntary, knowing, and intelligent waiver under *Miranda* and Article 38.22.

## C. Findings of Fact and Conclusions of Law

Hernandez briefly argues that the trial court's findings of fact and conclusions of law are insufficient under section 6 of Article 38.22 because the trial court did not make a specific finding that Hernandez waived his rights. Section 6 of Article 38.22 requires a trial judge, outside the presence of the jury, to state its conclusions about whether a statement was voluntarily made and to put its specific findings of fact on the record. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 6. In this case, the trial court made the following conclusion of law and finding of fact: "Then I'm going to deny the motion, and find that the State has complied with

38.22 with regard to the statement contained in the DVD." No objection or request for greater specificity was made.

Hernandez did not assert this complaint as a separate point of error but, instead, makes reference to the absence of a specific finding when arguing he did not knowingly, intelligently, and voluntarily waive his rights. Moreover, Hernandez does not ask this court to abate the appeal to obtain a specific finding. Texas Rule of Appellate Procedure 38.9, however, requires briefing rules to be liberally construed to include review of subsidiary issues that can be fairly included, even when they are not specifically raised as points of error. TEX. R. APP. P. 38.9.

Whether an appellate court must always abate and remand in the absence of sufficiently specific findings of fact is an evolving area of the law that has drawn several dissents and has caused disagreement among the courts. Most recent case law holds that making specific findings of fact is mandatory, regardless of whether there was a request or objection at the trial court, and abatement and remand is necessary when such is not done. *See, e.g.*, *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004) (en banc); *Wicker v. State*, 740 S.W.2d 779, 783 (Tex. Crim. App. 1987) (en banc), *cert. denied*, 485 U.S. 938 (1988); *Hester v. State*, 535 S.W.2d 354, 356 (Tex. Crim. App. 1976); *Vasquez v. State*, 179 S.W.3d 646, 654–55 (Tex. App.—Austin 2005), *aff'd on other grounds*, 225 S.W.3d 541. Because the mandatory nature of the statute contravenes the basic rules of preservation, c*ompare* TEX. R. APP. P. 33.1 (requiring an issue to have been timely and specifically raised in the trial court in order to complain on appeal), *with* *Urias*, 155 S.W.3d at 142 (reaffirming that Article 38.22 § 6 is mandatory whether or not the defendant objects), the waiver of rights issue is difficult and has caused criticism that the statutory command is being treated as fundamental error. *See Urias*, 155 S.W.3d at 143 (Keller,

P.J., dissenting from denial of reh.) (acknowledging the uncertainty of the law and suggesting more guidance be given as to whether this is one of the few errors that is not forfeitable).

On the other hand, there is also some support for the proposition that there must be a disputed fact issue and evidence presented on that issue in order for an abatement and remand to be necessary. *See Jackson v. Denno*, 378 U.S. 368, 391 (1964); *Quinn v. State*, 558 S.W.2d 10, 11–12 (Tex. Crim. App. 1977); *McKittrick v. State*, 535 S.W.2d 873, 876 (Tex. Crim. App. 1976); *Hester*, 535 S.W.2d at 356; *Miller v. State*, 666 S.W.2d 269, 274 (Tex. App.—Dallas 1984, pet. ref'd). The facts in this case are not disputed. The point in dispute is whether a waiver could be implied under these facts. Since this is an issue involving a mixed question of law and fact that we review de novo, we conclude that a more specific finding by the trial court is not necessary in this case. Our conclusion is further supported by the underlying purposes of the statute, which are to ensure that a trial judge does not make a baseless ruling admitting an involuntary confession and to provide reviewing courts with the basis for the ruling, the latter of which is particularly important when the ruling could hinge on a disputed issue of fact. *Hester*, 535 S.W.2d at 356; *Kellison v. State*, No. 05-06-01117-CR, 2008 WL 44424, at *6 (Tex. App.— Dallas Jan. 3, 2008, no pet.) (not designated for publication).

**APPROPRIATENESS OF READING BACK TESTIMONY TO THE JURY**

### A. *Standard of Review*

A trial judge's determination about whether a disagreement exists among the jury, which determines whether testimony can be read back, is reviewed for an abuse of discretion. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005); *Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim. App. 1994) (en banc). A trial court abuses its discretion when its ruling is so arbitrary it is outside the zone of reasonable disagreement. *Howell*, 175 S.W.3d at 790.

## B. *Article 36.28 of the Texas Code of Criminal Procedure*

Article 36.28 of the Texas Code of Criminal Procedure provides that a witness's testimony may be read back to a deliberating jury only "if the jury disagree[s] as to the statement of any witness." TEX. CODE CRIM. PROC. ANN. art. 36.28 (West 2006). Moreover, only "that part of such witness testimony or the particular point in dispute, and no other," may be read back to the jury. *Id.* A jury's request for a witness's testimony must implicitly or explicitly reflect disagreement about a particular point in the testimony. *Howell*, 175 S.W.3d at 790. "A simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under Article 36.28." *Id.* However, where an initial request does not indicate whether a dispute exists, the trial judge should communicate with and provide additional instruction to the jury. *Id.*; *Hernandez v. State*, No. 04-05-00262-CR, 2006 WL 1539497, at *1 (Tex. App.—San Antonio June 7, 2006, no pet.) (mem. op., not designated for publication).

During deliberations, the jury made inquiries about several matters. One such inquiry was a request "to see the transcript of Charlie Jones'[s] testimony regarding his confrontation of the intruders at the front door of the trailer." In response, the trial court sent a note, in part, tracking the language of Article 36.28:

> In the trial of a criminal case in a court of record, if the jury disagree[s] as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute[,] and no other.

> Do you have a dispute regarding a certain point of Charlie Jones'[s] testimony? If yes, what point is in dispute?

The presiding juror then responded: "Whether Charlie Jones identified Ricardo L. Hernandez as one of the intruders." Hernandez asserts that "[t]he note does not reflect a dispute among the

members of the jury; it merely reflects a collective failure to recall whether certain testimony was presented on the issue of whether [Hernandez] was identified by the witness, Charles Jones."

In *Howell v. State*, the Court of Criminal Appeals distinguished between a case where "[t]the trial court made no affirmative effort to determine if there was a dispute about the requested testimony," simply reading back the testimony because it was requested, and a case where the trial court communicated with the jury several times and "clearly informed the jury that testimony would be read back only in the event of a dispute." *Howell*, 175 S.W.3d at 791 (quoting *Robison*, 888 S.W.2d at 480) (internal quotation marks omitted); *Moore v. State*, 874 S.W.2d 671 (Tex. Crim. App. 1994). The case at hand is akin to the latter. In this case, the trial judge did not allow the testimony to be read back upon the jury's initial request; instead, the court provided the statutory language informing the jury that there must be a disagreement and asked whether a specific dispute existed. The presiding juror responded with the particular point in the testimony about which the jurors could not agree.

Therefore, the trial court did not abuse its discretion in allowing Jones's testimony to be read back to the jury.

## CONCLUSION

Because Hernandez's confession was voluntarily made and because the jury provided a specific part of the testimony in dispute, we overrule Hernandez's points of error and affirm the judgment of the trial court.

Catherine Stone, Chief Justice

PUBLISH

- 11 -