

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-13-00663-CR &
04-13-00713-CR[1]

Dillan William **STANLEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CR-8100B
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  January 28, 2015

AFFIRMED

After the trial court denied appellant Dillan William Stanley's motion to suppress, Stanley

pled guilty to the offense of murder.  On appeal, Stanley contends the trial court erred in denying

his motion to suppress the oral statements he made to law enforcement before and after his arrest.

We affirm the trial court's judgment.

---

[1] After judgment, both appellant's trial counsel and his current appellate counsel filed notices of appeal.  Based on the separate notices of appeal, this court inadvertently docketed this single appeal as two separate appeals, assigning the first notice of appeal number 04-13-00663-CR, and then assigning the second notice of appeal number 04-13-00713-CR.  It is clear there is but one judgment and one conviction for a single offense in this case.  Accordingly, we dismiss appeal number 04-13-00713-CR because it is merely duplicative of the first filed appeal.

**BACKGROUND**

Stanley was arrested for the capital murder of Gilbert Fernandez. Prior to trial, Stanley filed a motion to suppress oral statements he made to San Antonio detectives, Timm Angell and Omar Omungo. At the hearing on the motion, the State presented both detectives as witnesses. Additionally, the trial court admitted into evidence an audio recording of Stanley's interview with Detective Angell and a DVD recording of Stanley's post-arrest interview with Detective Omungo.

At the hearing, Detective Angell testified he was working at the main police station when Detective Omungo received a phone call advising him that two men, Stanley and Eric Ramirez, were at the Prue Road police substation. Stanley and Ramirez wanted to talk about a murder. Detective Angell stated he and Detective Omungo went to the substation to question the men. When they arrived, the detectives questioned the men separately.

Detective Angell testified he found Stanley seated with another officer at a desk located behind the service counter. Stanley was not in handcuffs. According to Detective Angell, he introduced himself to Stanley and discovered Stanley, who was eighteen-years-old, was at the substation to turn himself in for a robbery. Detective Angell stated he told Stanley he was not under arrest and he could leave whenever he wanted. According to Detective Angell, Stanley stated he did not understand why he was not under arrest. Detective Angell advised Stanley that he might be arrested later, but at this time, he was not under arrest. Stanley then told Detective Angell that he and Ramirez robbed Fernandez and during the robbery, Ramirez killed Fernandez by hitting him with a bat. The conversation lasted approximately thirty-six minutes; thereafter, Stanley left with his parents.

Detective Omungo testified he conferred with Detective Angell about the conversation with Stanley. Thereafter, Detective Omungo prepared a warrant for Stanley's arrest. The police

arrested Stanley the next morning and took him to a police substation where Detective Omungo interviewed him.

Detective Omungo testified that when he arrived at the substation, Stanley was in an interview room. Detective Omungo also testified he removed Stanley's handcuffs, introduced himself, and asked Stanley if he was "okay." Thereafter, the detective read Stanley his *Miranda* rights. According to Detective Omungo, after he asked Stanley if he understood his rights, Stanley nodded affirmatively. Detective Omungo then asked Stanley to share his side of the story. Stanley replied, stating his mother had told him to wait for a lawyer. Detective Omungo testified he told Stanley he could not force him to talk. Stanley then asked if he could call his mother to see if she was obtaining a lawyer. Detective Omungo testified he told Stanley he could call his mother if he wanted or he could talk to him about what happened. Stanley remained quiet for a moment and then proceeded to tell Detective Omungo how he and Ramirez robbed Fernandez and during the robbery, Ramirez murdered Fernandez.

Stanley was ultimately indicted for the offense of capital murder. Before trial, Stanley sought to suppress the statements he made to the two detectives. After the suppression hearing, the trial court denied Stanley's motion to suppress, making oral findings of fact. The trial court found Stanley's first statement — the statement he made to Detective Angell — was voluntary. The trial court further found Stanley waived his *Miranda* rights and failed to invoke his right to counsel when he made his post-arrest statement to Detective Omungo. After the trial court denied his motion to suppress, Stanley and the State entered into a plea agreement whereby Stanley pled guilty to the lesser offense of murder. Stanley preserved his right to appeal the denial of his motion to suppress. After judgment was rendered, Stanley perfected this appeal.

**ANALYSIS**

In two issues on appeal, Stanley contends the trial court erred by overruling his motion to suppress the oral statements he made during his interviews with Detective Angell and Detective Omungo. Specifically, Stanley argues the statement he made to Detective Angell was the product of a custodial interrogation and he was not given *Miranda* warnings. As to his post-arrest statement to Detective Omungo, Stanley contends the statement was involuntary and obtained in violation of his right to counsel.

***Standard of Review***

We review a trial court's ruling on a motion to suppress for an abuse of discretion under a bifurcated standard. *Hernandez v. State*, 387 S.W.3d 881, 884 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Under a bifurcated standard, we defer to the trial court's determination of historical facts and witnesses' credibility, but we review the trial court's application of the law to the facts under a de novo standard. *Hodson v. State*, 350 S.W.3d 169, 173 (Tex. App.—San Antonio 2011, pet. ref'd) (citing *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000)). If the trial court makes express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the factual findings. *Valtierra*, 310 S.W.3d at 447. Accordingly, we will uphold the trial court's ruling if that ruling is reasonably supported by the record and is correct under any theory of law applicable to the case. *Hernandez*, 387 S.W.3d at 885; *Valtierra*, 310 S.W.3d at 447.

***Application***

1. *Pre-Arrest Statement to Detective Angell*

As stated above, Stanley contends the trial court erred by overruling his motion to suppress the statement he made to Detective Angell. He contends the statement was the product of a

custodial interrogation and he was not given *Miranda* warnings. Therefore, he asserts his statement was involuntary.

As this court held in *Hines v. State*, law enforcement must, under *Miranda v. Arizona*, warn suspects of certain constitutional rights prior to a custodial interrogation. 383 S.W.3d 615, 621 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 478 (1966); *Hodson State*, 350 S.W.3d 169, 173 (Tex. App.—San Antonio 2011, pet. ref'd)). Additionally, law enforcement must abide by the provisions of Article 38.22 of the Texas Code of Criminal Procedure with regard to statements made during a custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2011). Article 38.22 provides that an oral statement is admissible against a defendant if the defendant was given certain warnings prior to making the statement, the warnings and the statement were electronically recorded, and the defendant "knowingly, intelligently, and voluntarily" waived these rights. *Id.* art. 38.22, §§ 2(a), 3(a)(1)-(2). However, warnings pursuant to *Miranda* and Article 38.22 are necessary only when a suspect is in custody. *Hines*, 383 S.W.3d at 621 (citing *Miranda*, 384 U.S. at 444; *Hodson*, 350 S.W.3d at 173). "'A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.'" *Hodson*, 350 S.W.3d at 173–74 (quoting *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)).

According to the Texas Court of Criminal Appeals, four situations constitute situations in which a defendant may be in custody: (1) when a suspect is physically deprived of his freedom of action in any significant way; (2) when a police officer tells a suspect he cannot leave; (3) when a police officer creates a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and a police officer does not tell a suspect he is free to leave. *Hodson*, 350 S.W.3d at 174. It is the

objective circumstances, not the subjective views of either the police officer or the defendant, that determine whether the defendant was subject to custodial interrogation. *Hines*, 383 S.W.3d at 621 (citing *Dowthitt*, 931 S.W.2d at 254); *Garza v. State*, 34 S.W.3d 591, 593 (Tex. App.—San Antonio 2000, pet. ref'd).

The State has no burden to show it complied with the mandates of *Miranda* or Article 38.22 "*unless* and *until* the defendant proves that the statements he wishes to exclude were the product of custodial interrogation." *Hines*, 383 S.W.3d at 621 (quoting *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (quoting *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)). Accordingly, Stanley had the burden to establish he was in custody before the State was required to show compliance with *Miranda* or Article 38.22. *See id.* We hold tStanley failed to meet this burden with regard to the statement made to Detective Angell.

A determination as to whether Stanley was in custody when he made the complained of statement to Detective Angell presents a mixed question of law and fact. *See Herrera v. State*, 241 S.W.3d at 526. Therefore, as to the portion of the custody issue that turns on witness credibility, we will defer to the trial court. *See Hodson*, 350 S.W.3d at 173. However, we will review the court's application of the law to the facts under a de novo standard. *See id.*

Stanley contends the interrogation by Detective Angell was custodial because: (1) Stanley provided the police with a damaging statement that established probable cause for his arrest, and (2) he was not allowed to speak to his family, who were in the process of obtaining an attorney on his behalf. We disagree and conclude the conversation between Detective Angell and Stanley did not rise to the level of a custodial interrogation.

Although a defendant's damaging admission with regard to a crime may be the key factor in establishing probable cause for his arrest, merely making a damaging statement is not enough to turn a situation into a custodial interrogation. *See Saenz v. State*, 411 S.W.3d 488, 497 (Tex.

Crim. App. 2013) (holding officer's knowledge of probable cause to arrest does not by itself create situation classified as custodial interrogation); *Trejos v. State*, 243 S.W.3d 30, 46–47 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Although a statement made by a person is sufficient to establish probable cause, the statement is not custodial if the court determines based on other facts that the person was not under arrest."). Instead, custody is established if the manifestation of probable cause *in combination with other factors* would lead a reasonable person to believe he is under restraint to the degree associated with a formal arrest. *Saenz*, 411 S.W.3d at 496.

In this case, the trial court's oral findings of fact support the trial court's conclusion that despite his admissions, Stanley was not in custody during his interview with Detective Angell. First, the evidence establishes, and the trial court found, that Stanley voluntarily went to the police substation to provide police with his version of the robbery and killing of Fernandez. *See Estrada v. State*, 313 S.W.3d 274, 294-95 (Tex. Crim. App. 2010) (holding that defendant was not in custody when he went to police station voluntarily, was told he was free to leave, and stayed willingly for five-hour interview); *White v. State*, 395 S.W.3d 828, 836 (Tex. App.—Fort Worth 2013, no pet.) (holding that defendant was not in custody when he voluntarily went to police station for one-hour interview, despite making pivotal admission). Second, Detective Angell testified he repeatedly told Stanley he was not under arrest, and the trial court subsequently found that although Stanley may have thought his admission would cause him to be arrested, he was informed several times he was not under arrest. *See Estrada*, 313 S.W.3d at 295 (holding reasonable person would believe he was free to leave when told by police several times he was free to leave even if defendant states he wants to leave but voluntarily stays); *Garcia v. State*, 106 S.W.3d 854, 858 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant was not in custody when he voluntarily went to police station, and after he was told he could leave, he gave damaging statement). In addition, the record shows Stanley was questioned by Detective Angell for approximately thirty-

six minutes in an open area, was not physically prevented from leaving the substation, was allowed to speak with his parents when he asked to speak to them, and was permitted to leave the substation with his parents.

Stanley points out that Detective Angell ignored his repeated requests to speak to his family regarding an attorney. However, Detective Angell testified he told Stanley he was free to leave when Stanley expressed concern about talking with an attorney. Detective Angell also testified that when Stanley asked to speak to his father, Detective Angell took Stanley to his father, who was seated twenty yards away.

Applying the applicable legal standard, we must give almost total deference to the trial court's custody determination when questions of historical fact turn on witnesses' credibility or demeanor. Here, we hold Detective Angell's testimony provides sufficient evidence to support the trial court's finding that Stanley was not in custody.

Under these circumstances, we hold a reasonable person would not believe he was under restraint to the degree associated with an arrest. We therefore conclude Stanley failed to meet his burden to establish he was in custody when he made his oral statement to Detective Angell. Because Stanley was not in custody, Detective Angell was not required to give Stanley warnings pursuant to *Miranda* or Article 38.22 prior to or during the interview. Accordingly, we hold the trial court did not err in denying the motion to suppress.

## 2. Post Arrest Statement to Detective Omungo

Stanley next contends the trial court erred in denying his motion to suppress with regard to his post-arrest statement to Detective Omungo. Stanley contends his post-arrest statement was involuntary because he did not fully understand the *Miranda* warnings read to him, and he did not waive his rights after the warnings were read. Stanley also claims he invoked his right to counsel

before giving any statement to Detective Omungo, but Detective Omungo ignored his request for counsel. We will address each of these arguments separately.

*Waiver*

As noted above, Article 38.22 of the Code of Criminal Procedure provides that an oral statement made by an accused as a result of custodial interrogation shall not be admissible against him in a criminal proceeding unless the statement was recorded and, prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. TEX. CODE CRIM. PROC. art. 38.22 § 3. The Article 38.22 warning must inform a defendant that:

> (1) [H]e has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
> (2) any statement he makes may be used as evidence against him in court;
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
> (5) he has the right to terminate the interview at any time[.]

TEX. CODE CRIM. PROC. art. 38.22, § 2. The State bears the burden to show by a preponderance of the evidence that the accused knowingly, intentionally, and voluntarily waived his rights. *See Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (citing *Miranda*, 384 U.S. at 444).

To be valid, a waiver of rights must be made with the full awareness of not only the nature of the rights being abandoned, but also the consequences of the decision to abandon those rights. *Joseph*, 309 S.W.3d at 25. To be voluntary, a waiver must be the product of a free and deliberate choice, not a result of coercion, intimidation or deception. *Id*. However, a waiver does not need to assume a particular form and can be inferred by the actions and words of the accused. *Id*. at 24 (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)); *see also Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988) (highlighting that waiver is not required to be written or orally

- 9 -

expressed). In other words, a waiver may be presumed upon a showing that an individual was given proper warnings, acted in a manner that indicated he fully understood his rights and the consequences of waiving such rights and made an uncoerced statement. *Berghuis v. Thompkins*, 560 U.S. 370, 384–85 (2010); *Joseph*, 309 S.W.2d at 25. To determine if an accused validly waived his rights, we must consider the totality of the circumstances surrounding the interrogation. *See Joseph*, 309 S.W.2d at 25–26.

The DVD recording of the post-arrest statement shows Detective Omungo read Stanley his rights and asked Stanley if he understood his rights. Stanley remained silent, but appeared to nod his head affirmatively. Detective Omungo confirmed Stanley's action by responding, "Yes." At the suppression hearing, Detective Omungo testified he asked Stanley if he understood his rights, and Stanley indicated he did. Furthermore, Detective Omungo testified he did not have any concerns about Stanley's mental capacity or his ability to understand the process. And, it is undisputed that after the detective read the warnings to Stanley, Stanley continued with the interview.

Stanley counters, arguing he did not affirmatively nod, and therefore, he did not expressly waive his rights. Stanley also contends he did not act in any way to show an affirmative waiver of his rights. The trial court found that although Stanley may not have clearly nodded, there was no showing or indication that Stanley did not want to proceed with the interview, and therefore, he waived his rights. We agree. As stated above, an express waiver of rights is not required. *See Joseph*, 309 S.W.2d at 24. It is within the trial court's discretion to rely upon an implied waiver when the totality of the circumstances, as reflected by the DVD recording and Detective Omungo's testimony, supports it. *Id.* at 25–26. There is nothing in the record to lead this court to conclude Stanley did not understand his rights. Although Stanley did not specifically state that he wished to waive his rights or that he understood his rights, Stanley acted in a manner to show he

understood his rights when he proceeded to speak to Detective Omungo and gave no indication he wished to remain silent. We therefore conclude the totality of the circumstances supports the trial court's reliance upon appellant's implied waiver of his rights.

*Invocation of Right to Counsel*

Stanley next contends that even if he did initially waive his rights, he later invoked his right to counsel when he asked to speak to his mother about an attorney before providing any statement to Detective Omungo. We disagree.

When an accused requests to speak to an attorney, a police officer must stop asking the accused questions until he is provided with an attorney. *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010); *State v. Gobert*, 275 S.W.3d, 888, 893 (Tex. Crim. App. 2009). However, a request for counsel must be unambiguous; in other words, it must be sufficiently clear that a reasonable police officer would understand the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459 (1994); *Davis*, 313 S.W.3d at 339; *Dalton v. State*, 248 S.W.3d 866, 872 (Tex. Crim. App. 2008). If an accused makes an ambiguous or equivocal statement, a police officer is under no obligation to ask the accused questions to clarify whether he really wants an attorney. *Davis*, 313 S.W.3d at 339; *Dalton*, 248 S.W.3d at 872.

Whether an accused actually invoked his right to counsel is an objective inquiry. *Davis*, 313 S.W.3d at 339. To determine if an accused invoked his right to counsel, we look at the totality of the circumstances surrounding the interrogation in combination with the accused's statement. *Dalton*, 248 S.W.3d at 872–73.

The DVD recording shows Stanley told Detective Omungo that his mother told him not to speak to anyone unless he had an attorney. Detective Omungo informed eighteen-year-old Stanley that it was up to him whether he wanted to discuss what happened. Stanley then asked if he could call his mother to ask if she was bringing an attorney, and Detective Omungo told Stanley he could

call his mother, but he was old enough to decide if he wanted to speak to the detective. Moreover, at the suppression hearing, Detective Omungo testified he told Stanley he was an adult and could make the decision on his own whether to speak to the detective without an attorney. Stanley paused, and Detective Omungo asked him what he would like to do. Stanley then proceeded to provide Detective Omungo with a statement regarding the robbery and murder.

After watching the DVD recording and hearing the testimony, the trial court found that Stanley did not clearly invoke his right to counsel. Rather, Stanley considered his options and decided to move forward and provide Detective Omungo a statement. We agree.

When considering the totality of the circumstances, we hold Stanley's request to speak to his mother with regard to her obtaining an attorney for him was not a clear invocation of his right to counsel. Texas case law holds that an invocation of the right to counsel must be clear and unambiguous. *See, e.g., Davis*, 313 S.W.3d at 341 (holding that defendant's statement "Should I have an attorney?" was not clear request for counsel); *Dalton*, 248 S.W.3d at 873 (holding that defendant's statement to officer to tell his friends to get lawyer was not direct, unequivocal request for attorney); *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that "Can I wait until my lawyer gets here?" was not clear and unambiguous invocation of right to counsel).

Here, Detective Omungo attempted to clarify Stanley's statement by asking him what he wanted to do. Contrary to the situation presented in *In re H.V.*, where a Bosnian juvenile's statement that he "wanted his mother to ask for an attorney" was construed as an unambiguous request for an attorney under the totality of the circumstances, this case involves an adult requesting to ask his mother whether she hired an attorney. *See* 252 S.W.3d 319, 327 (Tex. 2008). Stanley's ambiguous question about calling his mother to inquire about the status of counsel was followed by his unambiguous decision to continue to discuss the situation with Detective Omungo.

Accordingly, considering the totality of the circumstances from an objective viewpoint, we conclude the trial court did not err in concluding Stanley did not invoke his right to counsel. If anything, Stanley's request to speak to his mother about an attorney confirms Stanley understood his rights as well as the consequences of waiving such rights, and therefore, made a valid waiver. Consequently, we hold the trial court did not err in denying the motion to suppress Stanley's post-arrest statement to Detective Omungo.

## CONCLUSION

Based on the foregoing, we conclude the trial court did not err in denying Stanley's motion to suppress. Accordingly, we overrule Stanley's complaints and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish