

# NUMBER 13-23-00140-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ISMAEL MEZA MEDRANO,                                           Appellant,

v.

THE STATE OF TEXAS,                                           Appellee.

## ON APPEAL FROM THE 139TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Tijerina and Peña
### Memorandum Opinion by Justice Tijerina

A jury convicted appellant Ismael Meza Medrano of murder and assessed punishment at a period of forty-five years' imprisonment. [1] *See* TEX. PENAL CODE ANN. § 19.02. Appellant argues the trial court erred by denying his motion to suppress his

---

[1] The jury rejected appellant's claim of sudden passion when it rendered its sentence.

confession because he did not voluntarily, knowingly, and intelligently waive his rights. We affirm.

## I. BACKGROUND

Appellant was charged by indictment for murder. *See id.* Prior to trial, appellant filed a motion to suppress alleging that his custodial statement was inadmissible because it was involuntary and coerced. The trial court held a hearing, and the following transpired.

Hidalgo County Sheriff's Office Investigator Carlos Hinojosa testified that on March 21, 2024, he conducted a custodial interview of appellant. Before he commenced, Investigator Hinojosa stated that he read appellant his *Miranda* rights in Spanish verbatim from a document issued by the sheriff's office, tracking the mandatory *Miranda* rights. According to Investigator Hinojosa, all his interactions with appellant were in Spanish, so he assumed that was appellant's native language and chose to conduct the interview in Spanish. After advising appellant of his *Miranda* rights, Investigator Hinojosa confirmed that appellant understood his rights, and appellant signed his initials by each right that was read to him. Investigator Hinojosa then asked Appellant, "Having understood these rights, do you want to talk to us now?" Appellant replied, "Well yes, I've already started." Appellant thereafter confessed to strangling his wife and intending to kill himself—so they could die together—due to his concern of her infidelity.

The trial court made the following findings of fact and conclusions of law: Investigator Hinojosa was fluent in Spanish; Investigator Hinojosa provided appellant with the necessary warnings in his native language; appellant understood the *Miranda*

2

warnings; appellant indicated so by his signature and initials; appellant agreed to make a statement; and appellant did not invoke any of his rights at any time. The trial court found that appellant's written and recorded statements were freely and voluntarily made, and they were admitted into evidence. A jury convicted him of murder and sentenced him as stated above. This appeal followed.

## II.    MOTION TO SUPPRESS

By appellant's sole issue, he argues the trial court erroneously denied his motion to suppress because he did not understand the *Miranda* warnings read to him, and thus, did not voluntarily waive his rights.

### A.    Standard of Review & Applicable Law

"We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Wells v. State*, 611 S.W.3d 396, 405 (Tex. Crim. App. 2020). We review *de novo* mixed questions of law and fact that do not hinge on assessments of credibility or demeanor. *Id.* at 405–06 (citing *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016)). If the ruling of the trial court is correct under any applicable theory of law, we will sustain its ruling. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim. App. 2013).

Under *Miranda*, prior to any questioning, the person must be warned that he has

3

a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney. *See Miranda v. Arizona*, 384 U.S. 463, 444 (1966)*; see also Rodriguez v. State*, No. 13-19-00498-CR, 2020 WL 6072622, at *3 (Tex. App.—Corpus Christi–Edinburg Sept. 24, 2020, no pet.) (mem. op., not designated for publication)*.* The Code of Criminal Procedure further establishes procedural safeguards against self-incrimination. *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22). "Before an oral recorded statement may be admitted into evidence, the State must show 'prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning.'" *Leza v. State*, 351 S.W.3d 344, 351 (Tex. Crim. App. 2011) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3). We use the totality of the circumstances to determine whether appellant waived his rights knowingly, intelligently, and voluntarily. *Joseph*, 309 S.W.3d at 25.

The State has the burden to prove a valid waiver of *Miranda* rights by a preponderance of the evidence. *Leza*, 351 S.W.3d at 349. Two steps are required for a valid waiver: (1) the waiver must be voluntary, meaning that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) the waiver must be made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

4

**B.    Analysis**

Appellant's custodial interrogation was admitted into evidence. The entire interrogation was conducted in Spanish, including all questions and responses. In the video, Investigator Hinojosa first offered appellant some water before beginning the interrogation. He then asked for appellant's name, address, and line of work. Appellant responded. Investigator Hinojosa then recited appellant his *Miranda* rights. At the motion to suppress hearing, Investigator Hinojosa stated that he read "Spanish Miranda warnings" from "a written policy where it's a paper that has the Miranda Warnings that are read verbatim to the individual." The warnings, which were admitted into evidence, were read to appellant in his native language and made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights. *See Miranda*, 384 U.S. at 444, TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. When Investigator Hinojosa asked if appellant understood his rights and if appellant would like to proceed with the interview, appellant affirmatively stated that he understood all the rights and that he would like to continue the interview when he stated: "Well yes, I've already started." *See Joseph*, 309 S.W.3d at 27 ("When asked if he understood his rights, Appellant replied, 'Yes, sir,' and signed his name in the margin of the warning card.").

Furthermore, appellant initialed the rights he was waiving, and he signed a waiver of his rights—also in Spanish—which indicated that he understood he was waiving those rights. *See Hernandez v. State*, 387 S.W.3d 881, 886 (Tex. App.—San Antonio 2012, no pet.). ("[W]hen Hernandez was taken to the police station and read the warnings

5

mandated by Article 38.22—which substantively include all of the *Miranda* warnings—he verbally acknowledged understanding each one, contemporaneously initialing next to each warning on a written document."). The video demonstrates that immediately after being recited his *Miranda* rights, appellant willingly participated in an almost hour-long interview, did not ask that the interview be terminated, and did not request an attorney at any time. *See id.* at 885–86. ("At no time did Hernandez ask to stop the interview or ask for counsel."). To the contrary, appellant was very detailed about the days preceding the murder, and he provided Investigator Hinojosa with a step-by-step sequence of events that occurred leading to the murder, suggesting that the information he chose to provide was given voluntarily. *See id.* at 885 ("Hernandez willingly shared his version of the events with Detective Davila immediately after receiving and acknowledging his understanding of the warnings.").

Thus, appellant participated in the interview without confusion or complication, evincing that appellant understood what Investigator Hinojosa was saying throughout the interview. *See Joseph*, 309 S.W.3d at 27. In this regard, Investigator Hinojosa testified that appellant did not appear to be under the influence of any narcotics, drugs, or alcohol. Furthermore, the record shows no evidence of intimidation or coercion. *See Hernandez*, 387 S.W.3d at 886. Investigator Hinojosa did not promise Rodriguez anything, so there appears to be no possibility that a promise from police could have jeopardized the voluntariness of appellant's statement. *See Joseph*, 309 S.W.3d at 27.

We conclude, appellant's conduct demonstrated that he had the requisite level of comprehension to waive his *Miranda* rights. *See id.* The totality of the circumstances surrounding the interrogation shows appellant's waiver was voluntary and resulted from a free and deliberate choice without intimidation, coercion, or deception. We overrule appellant's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
25th day of July, 2024.