Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-10-00060-CR

Karl Anthony **HODSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 4727
Honorable N. Keith Williams, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  May 11, 2011

AFFIRMED

A jury convicted Appellant Karl Anthony Hodson of capital murder.  The trial court assessed punishment at confinement in the Texas Department of Criminal Justice-Institutional Division for life without parole.  On appeal, Hodson contends the trial court erred in denying his motion to suppress his statements to law enforcement officers made on July 24, 2007 and July 25, 2007.  We affirm the trial court's judgment.

**BACKGROUND**

Leon Denver Poe, a Pizza Hut delivery man, was robbed and stabbed to death while making a pizza delivery. Once Poe's body was recovered, Texas Ranger Sergeant Kyle Dean traced the call made to Pizza Hut to Hodson's parents' cellular phone account. Sergeant Dean then contacted Hodson's father and asked that Hodson call the Ranger back. During this time, Sergeant Dean had interviewed some witnesses who placed a white pick-up truck with rust spots at the murder scene.

### *July 24, 2007 Statement*

Once Hodson called Sergeant Dean back, Sergeant Dean contacted Sergeant Randy Boysen with the Department of Public Safety, asking him to go to the family residence to determine if Hodson would agree to an interview.

When Sergeant Boysen arrived at the Hodson family residence, he noticed a white pick-up truck with rust spots. Sergeant Boysen asked Hodson and his girlfriend, co-defendant Jenillee Sheppard, if they would agree to an interview with Sergeant Dean. Both Hodson and Sheppard said they were willing to do the interview. Due to the recent heavy rain, the road to the Hodson residence was very slippery and Sergeant Boysen was afraid Sergeant Dean would not be able to make it up the road so he suggested meeting Sergeant Dean at the Bandera County Lakehills Annex ("the Annex"). Sergeant Boysen then informed Hodson and Sheppard that they were not under arrest and that the interview was voluntary. All parties, including Hodson's parents, agreed to the interview at the Annex. Deputy David McGilvray was at the Hodson residence as well. Deputy McGilvray offered to drive Hodson to the Annex, which Hodson accepted. Deputy McGilvray testified he did not order Hodson to ride with him.

At the Annex, Hodson agreed to be interviewed without the presence of Sheppard or his parents. Sheppard was then taken to a separate room. At the start of the interview, Sergeant Dean advised Hodson he was not under arrest and was free to leave at any time. Sergeant Dean did not read Hodson his statutory warnings because Sergeant Dean did not feel as if he had probable cause to arrest Hodson at that time. During the sixty minute interview, Hodson admitted to being present at the time of the murder and robbery. Hodson also said he helped dispose of the body because a man named Paul Strait told Hodson he would kill him if Hodson did not help. Sergeant Dean then told Hodson he did not believe him and that he would be interviewing Sheppard soon and she would "give it up."

When the interview concluded, Sergeant Dean allowed Hodson's parents to go in and see their son. Sergeant Dean did not station anyone outside the interview room to prevent Hodson from leaving. Sergeant Dean testified Hodson never asked to leave, speak to his parents or an attorney, nor was he told he was not free to leave.

Sergeant Dean then interviewed Sheppard. During the interview, he heard a commotion but continued the interview. Sheppard told Sergeant Dean it was her belief they were only going to rob Poe but that she saw Hodson stab him.

While Sergeant Dean was interviewing Sheppard, Deputy McGilvray heard the commotion as well, and when he looked in the interview room, he saw Hodson half-way outside the window. Deputy McGilvray testified Hodson's father was hanging onto Hodson's legs while trying to fall backwards. Sergeant Boysen was outside the Annex and saw Hodson drop from a window and run away. Sergeant Boysen pursued Hodson on foot.

While Hodson was on the run, Sergeant Dean used Sheppard's statement that she had seen Hodson stab Poe to secure an arrest warrant for Hodson. Hodson was eventually arrested.

### *July 25, 2007 Statement*

After Hodson was arrested, he was taken before a magistrate. Hodson was then read and advised of his rights per article 15.17 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 15.17 (West Supp. 2010). At the magistrate hearing, when asked if he wanted an attorney appointed to represent him, Hodson replied in the affirmative and filled out the appropriate paperwork.

After magistration, Hodson was taken from the Bandera County jail to the Kendall County jail. It was at the Kendall County jail that Lieutenant Louis Martinez interviewed Hodson. Before the interview began, Lieutenant Martinez again advised Hodson of his rights. Hodson waived those rights on the record during the interview and agreed to speak to Lieutenant Martinez without his attorney present. It was during this interview that Hodson confessed to robbing and stabbing Poe.

### *Trial Court Proceedings*

Hodson filed a motion to suppress the oral statements made on July 24 and July 25, claiming the statements were obtained in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, Article 1, Section 9 of the Texas Constitution, and articles 15.17 and 38.22 of the Texas Code of Criminal Procedure.

After the first suppression hearing, the trial court denied Hodson's motion to suppress the July 24 statement but, with the State's concession at that hearing, granted his motion to suppress the July 25 statement.

A second suppression hearing was held to reconsider the admissibility of Hodson's second statement. Based on a recent United States Supreme Court case, *Montejo v. Louisiana*,

the trial court denied Hodson's motion to suppress the July 25 statement. *See* 129 S.Ct. 2079 (2009).

Hodson was subsequently found guilty of capital murder and sentenced to life without parole. He then perfected this appeal.

## ANALYSIS

### *Standard of Review*

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion under a bifurcated standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). As the reviewing court, we will defer to the trial court's determination of facts but review the trial court's application of the law de novo. *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). All evidence will be viewed "in the light most favorable to the trial court's ruling." *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). The trial court's ruling will be upheld if there is any valid theory of law applicable to the case, even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

### *July 24, 2007 Statement*

In his first point of error, Hodson contends his statements made on July 24, 2007 should have been suppressed because he was in custody, but was never given the required constitutional and statutory warnings. The State contends Hodson was not in custody when the interview took place and therefore, the statutory warnings were not required.

A suspect need only be given article 38.22 and *Miranda* warnings if the suspect is in custody. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005); *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a

formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)).  The Texas Court of Criminal Appeals has recognized four situations that may constitute custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Id.*  Because Hodson was repeatedly told he was not under arrest and was free to leave at any time, we are only concerned with the first, third, and fourth situations.  This court has found that when interpreting the fourth situation, we consider whether the suspect voluntarily arrived at the place of interrogation, the length of the interrogation, whether the suspect was forbidden from seeing family or friends, how much control was exercised over the suspect, and whether a "pivotal admission established custody."  *Espinoza v. State*, 185 S.W.3d 1, 3 (Tex. App.—San Antonio 2005, no pet.) (quoting *Xu v. State*, 100 S.W.3d 408, 413 (Tex. App.—San Antonio 2002, pet. ref'd)).  These factors are also helpful in determining whether a suspect is in custody in the first and third situations.  *Id.*  Therefore, we will focus our analysis on these factors.

Hodson voluntarily went to the Annex with Deputy McGilvray.  The interview began promptly, lasted about an hour, and Hodson was only waiting twenty-six minutes or so before he fled the Annex through the window.  It was undisputed that Hodson was allowed to see his parents after the interview.  As for the amount of control exercised over Hodson, he was told he was there voluntarily and could leave at any time because he was not under arrest, his family was allowed to see him, and no guard was stationed outside his interview room to keep him from leaving.  At no point in time was Hodson placed in handcuffs or physically restrained.

As for the final factor, Hodson made an admission during the interview. The question becomes whether this admission established custody. Hodson relies on *Dowthitt* because in that case, the defendant admitted to being present during the murders. The Court of Criminal Appeals held that "a reasonable person would have realized the incriminating nature of the admission." *Dowthitt*, 931 S.W.2d at 257. But, the court in *Dowthitt* also found other factors indicating police control over the defendant, such as an interrogation lasting over twelve hours, the defendant being escorted to and from the restroom, police officers ignoring his requests to see his wife and ignoring his complaints of exhaustion, and the defendant being denied food. *Id.*

Situations where the manifestation of probable cause triggers custody are unusual. *State v. Stevenson*, 958 S.W.2d 824, 829, n.7 (Tex. Crim. App. 1997). Even though a suspect may implicate himself in an offense, unless the circumstances are unique, as in *Dowthitt*, "this alone does not trigger custody." *Garcia v. State*, 237 S.W.3d 833, 837 (Tex. App.—Amarillo 2007, no pet.). "[A]lthough appellant's statements were sufficient to establish probable cause to arrest him, the other circumstances present would not 'lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.'" *Trejos v. State*, 243 S.W.3d 30, 47 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (quoting *Dowthitt*, 931 S.W.2d at 254). Here, Sergeant Dean testified Hodson admitted to being present during the robbery and murder. Other than this admission, there were no other circumstances present to lead a reasonable person to believe he was under arrest.

We hold the trial court correctly concluded Hodson was not in custody when he made the statements in question. Because Hodson was not in custody at that time, the failure to admonish him of his constitutional and statutory rights did not render the statements inadmissible.

Therefore, we hold that the trial court did not abuse its discretion in denying Hodson's motion to suppress the July 24 statements.

### *July 25, 2007 Statement*

In his second point of error, Hodson contends his statements made on July 25, 2007 should have been suppressed because his Fifth and Sixth Amendments right to have an attorney present during questioning attached when he requested an attorney at the magistrate hearing. Hodson argues that because he requested an attorney during magistration, law enforcement officers were not allowed to re-initiate contact with him at the jail and therefore, his inculpatory statements to Lieutenant Martinez should have been suppressed. The State argues, and we agree, that in light of *Montejo v. Louisiana*, law enforcement officers are no longer barred from re-initiating contact once a defendant has requested an attorney.

Prior to *Montejo*, *Michigan v. Jackson* was the controlling case on the Sixth Amendment right to counsel. 475 U.S. 625 (1986), *overruled by Montejo v. Louisiana*, 129 S.Ct. 2079 (2009). *Jackson* stood for the proposition that once a defendant requested an attorney at an arraignment or magistrate hearing, law enforcement officers were barred from initiating interrogation thereafter. *Id.* at 636. If law enforcement officers initiated the interrogation, "any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.*

*Montejo* changed the landscape by expressly overruling *Jackson*. *Montejo*, 129 S.Ct. at 2091. In *Montejo*, the defendant, charged with murder, was taken before a judge and counsel was appointed for him. *Id.* at 2082. After the preliminary hearing, two law enforcement officers asked Montejo to go with them to find the murder weapon. *Id.* Although it was disputed, Montejo was read his *Miranda* warnings and finally agreed to accompany the officers. *Id.* During this excursion, Montejo wrote a letter of apology to the widow; the letter was later

admitted at trial. *Id.* The Supreme Court explained that even though Montejo had been appointed counsel at the preliminary hearing, the officers were not barred from re-initiating contact with him after the hearing and the inculpatory letter was admissible under the Sixth Amendment. *Id.* at 2091.

The Court explained that *Jackson* was no longer needed because: (1) *Miranda v. Arizona* guarantees any suspect in custodial interrogation the right to have an attorney present, and to be advised of that right;[1] (2) *Edwards v. Arizona* guarantees that once a suspect has invoked his right to an attorney, interrogation must cease;[2] and (3) *Minnick v. Mississippi* guarantees that once a suspect has invoked his right to counsel and the interrogation has ceased, interrogation may not resume until counsel is present.[3] *Montejo*, 129 S.Ct. at 2089-90. The Court further explained that under these three cases, "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings." *Id.* at 2090.

The Court remanded the case due to Fifth Amendment concerns: "If Montejo made a clear assertion of the right to counsel when the officers approached him about accompanying them on the excursion for the murder weapon, then no interrogation should have taken place unless Montejo initiated it." *Id.*

The Texas Court of Criminal Appeals, in *Hughen v. State*, echoed the Supreme Court's holding in *Montejo*. 297 S.W.3d 330, 336 (Tex. Crim. App. 2009). The defendant in *Hughen* was taken before a magistrate and asked that counsel be appointed to represent him. *Id.* at 332. Thereafter, Hughen was interviewed by law enforcement officers and made inculpatory

---

[1] 384 U.S. 436 (1966).

[2] 451 U.S. 477 (1981).

[3] 498 U.S. 146 (1990).

statements. *Id.* at 332. Although the court held that Hughen's Sixth Amendment right to counsel had not been violated when the officers re-initiated contact, the court did not comment on Hughen's Fifth Amendment right to counsel because he raised only the issue of his Sixth Amendment right, not his Fifth Amendment right. *Id.* at 335. Regarding the Fifth Amendment, the court only stated, "the Fifth Amendment does bar police-initiated interrogation of an accused who, in the context of custodial interrogation, has previously asserted his right to counsel during such interrogation, unless the accused's counsel is actually present." *Id.*

In light of *Montejo* and *Hughen*, we can easily dispose of Hodson's Sixth Amendment argument that his July 25 statement is inadmissible because Lieutenant Martinez re-initiated contact with him after he had requested counsel at the magistrate hearing. Because law enforcement officers are no longer barred from re-initiating contact with a defendant after that defendant has requested counsel at a preliminary hearing, those statements taken during these interviews are no longer presumed invalid under the Sixth Amendment. *See Montejo*, 129 S.Ct. at 2091; *Hughen*, 297 S.W.3d at 336.

Our inquiry turns to whether Hodson's relinquishment of his Sixth Amendment right to counsel was voluntary, knowing, and intelligent. *See Patterson v. Illinois*, 487 U.S. 285, 292, n. 4 (1988). A waiver will be voluntary, knowing, and intelligent when the suspect is admonished with the *Miranda* warnings, "apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights . . . ." *Id.* at 296. Article 38.22 of the Code of Criminal Procedure ("the Code") sets out the statutory warnings that must be given in order for a waiver to be knowingly, intelligently, and voluntarily waived. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005). The Code states that no oral statement will be admissible unless it was electronically recorded and the suspect has been warned, on the record, that he has the right to:

remain silent because any statement given may be used against him, have an attorney present, have an attorney appointed, and to terminate the interview at any time. *Id.* art. 38.22 § 2.

It is the State's burden to prove, by a preponderance of the evidence, that a suspect knowingly, intelligently, and voluntarily waived those rights. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). To ascertain whether a suspect has knowingly, intelligently, and voluntarily waived his rights, voluntariness and awareness must be addressed. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Joseph*, 309 S.W.3d at 25.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran*, 475 U.S. at 421; *Joseph*, 309 S.W.3d at 25.

Although Hodson made an oral statement, Lieutenant Martinez electronically recorded that statement. Lieutenant Martinez then read Hodson the statutory warnings. When asked if he understood his rights, Hodson asked for clarification on when he could stop the interview. Lieutenant Martinez responded, "You can stop talking anytime you want. Nobody can make you talk." Hodson then stated that he understood his rights and proceeded to give his statement. At the suppression hearing, Lieutenant Martinez testified that in his opinion, Hodson freely and voluntarily gave the statement and that at no time during the interview did Hodson invoke any of his statutory rights or was offered anything in exchange for giving a statement. The record supports Lieutenant Martinez's assertions because it shows no evidence of intimidation or

coercion. We agree with the trial court that based on the totality of the circumstances, Hodson freely and voluntarily waived his statutory rights prior to giving the statement.

Therefore, in light of *Montejo v. Louisiana*, we overrule Hodson's contention that his Sixth Amendment rights were violated when Lieutenant Martinez interviewed him after he requested an attorney at the magistrate hearing. We also hold the State proved, by a preponderance of the evidence, that Hodson knowingly, intelligently, and voluntarily waived his rights before the inculpatory statements were made. Therefore, the trial court did not err in denying the motion to suppress the July 25 statements.

## CONCLUSION

Based on the foregoing, we overrule Hodson's two points of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

Publish