PD-0266-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/30/2015 5:28:58 PM
Accepted 3/31/2015 4:38:46 PM
ABEL ACOSTA
CLERK

No. PD-0266-15

IN THE COURT OF CRIMINAL APPEALS

Dillan William Stanley
Appellant

v.

The State of Texas
Appellee

On Appeal from Bexar County in Case No. 2011CR8100B, from the 186th District Court, the Hon. Teresa Herr, Judge Presiding; and the Opinion of the Fourth Court of Appeals in Case Nos. 04-13-00663-CR & 04-13-00713-CR, Delivered January 28, 2015.

# Petition for Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

March 31, 2015

ABEL ACOSTA, CLERK

Submitted by:

Anthony B. Cantrell
Attorney at Law
111 Soledad, Suite #1200
San Antonio, Texas 78205
Tel. 210-490-1207
e-mail: cantrelllaw@sbcglobal.net
State Bar No. 03763180

Attorney for Dillan William Stanley

1

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a), Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the members of the Court may at once determine whether they are disqualified to serve of should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

**Appellant**                                        Dillan William Stanley

**Attorney for Appellant**
   **Trial Counsel:**

                                                     Therese Huntzinger
                                                     Patrick Hancock
                                                     206 E. Locust
                                                     San Antonio, Texas 78254

   **Appellate Counsel:**

                                                     Anthony B. Cantrell
                                                     111 Soledad, Suite 1200
                                                     San Antonio, Texas 78205

**Attorneys for the State**
   **Trial Counsel:**

                                                     Todd Winslow
                                                     David Martin
                                                     Bexar County District Attorney's Office
                                                     101 Paul Elizondo Tower
                                                     San Antonio, Texas 78205

   **On Direct Appeal:**

                                                     Crystal Chandler
                                                     Assistant Criminal District Attorney
                                                     101 W. Nueva, Suite 370
                                                     San Antonio, Texas  78205

ii

# TABLE OF CONTENTS

*Identity of Parties and Counsel* ........................................... ii

*Table of Contents* ........................................................ iii

*Index of Authorities* ...................................................... v

*Statement Regarding Oral Argument* ....................................... vii

*Statement of the Case* ................................................... vii

*Statement of Procedural History* ......................................... vii

*Reasons for Review* ........................................................ 1

*Facts of the Case* ......................................................... 2

*Ground for Review One* ..................................................... 4

The Court of Appeals erred in holding Appellant's first statement did not warrant Miranda protections since the interview was not custodial.

*Ground for Review Two* ..................................................... 7

The Court of Appeals erred in holding that appellant's invocation of counsel in his second statement was equivocal.

*Ground for Review Number Three* ........................................... 10

The court of appeals erred in affirming the trial court's denial of the motion to suppress Appellant's statement because Appellant did not knowingly, intelligently, and voluntarily waive his rights under Article 38.22 and *Miranda.*

*Ground for Review Number Four* ............................................ 13

The court of appeals erred in ruling that Officer Omungo attempted to clarify Appellant's ambiguous request for counsel prior to Appellant's second statement.

***Prayer*** ............................................................................................... 15

***Certificate of Compliance and Delivery*** ............................................. 16

# Index of Authorities

*Ancira v. State, 516 S.W.2d 924, 927 (Tx.Cr.App.1974)* .................... 4,6

*Davis v. State, 313 S.W.3d 317, 341(Tx.Cr.App.2010)* .................... 7

*Davis v. United States, 512 U.S. 452 (1994)* .................... 8,10

*Delao v. State, 235 SW 3d 235, 241 (Tx.Cr.App.2007)* .................... 13

*Dowthitt v.State, 931 S.W. 2nd 244, 255 (Tx.Cr.App.1996)* .................... 5, 6

*Fare v. Michael C., 442 U.S. 707 (1979)* .................... 11

*In Re H.V, 252 S.W. 3d 319, 327 (Tex. 2008)* .................... 1,7-9

*Martinez v. State, 275 S.W.3d (Tex. App—San Antonio 2008)* .................... 12

*Maryland v. Shatzer, 559 U.S. 98 (2010)* .................... 10

*Moran v. Burbine, 475 U.S. 412 (1986)* .................... 11

*Lucas v. State, 791 S.W.2d 35, 46 (Tx.Cr.App.1989)* .................... 14

*Newberry v. State, 552 S.W. 457 (1977)* .................... 6

*Reed v. Texas, 227 S.W. 3d 111, 115* .................... 14

*Ruth v. Texas, 645 S.W.2d 432, 435 (Tx.Cr.App.1979)* .................... 5,6

*Smith v. Illinois, 469 U.S. 91, 98 (1984)* .................... 13

*State v. Gobert, 275 S.W.3d 888, 892 (Tx.Cr.App.2009)* .................... 7

**Texas Statutes**

    *Code of Criminal Procedure art. 38.22* .................... 9

## Rules

Tex. R. App. P. 9.4(e) .......................................................... 15

Tex. R. App. 38.1 .......................................................... ii

Tex. R. App. P. 66.3 .......................................................... 1

## Statement Regarding Oral Argument

Appellant would show the Court that oral argument would assist the Court in its resolution of the matters presented.

## Statement of the Case[1]

The following is a general statement of the nature of the case:

This is a case concerning an error in the trial court's denial of Appellant's motion to suppress oral statements. At issue is whether Appellant sufficiently invoked his right to counsel during two separate interrogations.

## Statement of Procedural History

Appellant, Dillan Stanley, was charged by indictment with murder, a first degree felony, in Cause No. 2011-CR-8100B, in the 186th Judicial District Court of Bexar County, Texas. While preserving his right to appeal on the trial court's ruling on his motion to suppress oral statements, appellant plead guilty and was sentenced to imprisonment for forty-five (45) years. Notice of Appeal was timely given. The Court of Appeals for the Fourth Court of Appeals District of Texas in San Antonio affirmed Mr. Stanley's conviction in Dillan William Stanley v. State of Texas, Cause No. 04-13-00663-CR and 04-13-00713-CR. Counsel for Mr. Stanley filed a Motion for Extension of Time to file his Petition for Discretionary Review in the Texas Court of Criminal Appeals which was granted until March 30, 2015.

---

[1] The clerk's record consists of one volume, which will be cited as "CR[volume]" and "[page]. The reporter's record consists of three volumes, which will be cited as "R.R.[volume] and [page]".

# Reasons for Review

1. The court of appeals erred in holding Appellant's first statement did not warrant *Miranda* protections since the interview was not custodial. Tex. R. App. Proc. 66.3(a).

2. The court of appeals erred in holding that appellant's invocation of counsel was equivocal. The ruling conflicts with a previous ruling by the Texas Supreme Court in *In Re. H.V.* Tex R. App. Proc. 66.3(a)

3. The court of appeals erred in affirming the trial court's denial of the motion to suppress Appellant's second statement because Appellant did not knowingly, intelligently, and voluntarily waive his rights under Article 38.22 and *Miranda.* Tex. R. App. Proc. 66.3(a).

4. The court of appeals erred in ruling that Officer Omungo attempted to clarify Appellant's ambiguous request for counsel prior to Appellant's second statement. This ruling is in conflict with another court of appeals' decision on the same issue. Tex. R. App. Proc. 66.3(a).

1

## Facts of the Case

On September 6, 2013, Dillan William Stanley entered a plea of guilty to the charge of murder. Prior to his plea, Stanly filed a motion to suppress oral statements made to Detective Timm Angell and Omar Omungo. At the hearing, both detectives testified as witnesses, and the trial court admitted into evidence an audio recording of Stanley's interview with Detective Angell and a DVD recording of Stanley's post-arrest interview with Detective Omungo.

On June 27, 2011, Stanley arrived with his father the Prue Road substation of the San Antonio Police Department to turn himself in for a robbery and to present himself as a witness to a murder. Detective Angell informed Stanley that he was not under arrest. When Detective Angell proceeded to question Stanley, Stanley immediately invoked his right to counsel by telling Detective Angell he did not want to speak until his mother brought a lawyer. On multiple occasions during the thirty-six minute interview, Stanley reiterated that he did not want to say any more without an attorney present. Nevertheless, Detective Angell continued to question Stanley and cajoled him into making a statement. After talking with Stanley's family and after Stanley again asserted that he'd rather speak to attorney, Detective Angell finally advised the family to leave and consult an

2

attorney. Stanley and his family indicated they did not want to leave the police station, preferring to wait until a lawyer arrived.

Detective Omungo testified he conferred with Detective Angell about the conversation with Stanley and shortly thereafter prepared a warrant for Stanley's arrest. At midnight, no more than six hours after speaking with Detective Angell, Dillan Stanley was arrested before his family could procure the services of an attorney.

In the early hours of the morning, Detective Omungo interviewed Stanley. Detective Omungo read Stanley his Miranda rights and asked him if he understood these rights. The video of this exchange was played for the trial court and indicated that Stanley failed to respond to Detective Omungo's question as to whether he understood these rights. Detective Omungo continued to ask for Stanley's side of the story. Stanley responded by saying his mother had told him to wait for a lawyer. Stanley then asked if he could call his mother to see if she was obtaining a lawyer. Detective Omungo then gave Stanley two options. He could tell his version of the story or let the facts stand as they had them, which included Eric Ramirez's version of the story. After a moment of silence, Stanley began telling Detective Omungo about the robbery and murder.

# ARGUMENT

## 1. The Court of Appeals erred in ruling Appellant's statement to Detective Angell did not warrant *Miranda* protections since the interview was not custodial.

Can a suspect be in custody for *Miranda* purposes if he has been informed before making his statement that his arrest is imminent? Has law enforcement effectively circumvented *Miranda* by simply notifying a suspect at the beginning of an interrogation he is not under arrest and is free to leave, only to arrest the suspect moments after extracting a statement?

Whether a defendant was in custody at the time of an interrogation is determined by a case-by-case review. *Ancira v. State, 516 S.W.2d 924, 927.* When Stanley arrived at the Prue Road police substation, he clearly stated his intention to turn himself in for a robbery and establish himself as a witness to a murder. Stanley believed this was sufficient probably cause to prompt his arrest, and immediately upon being questioned by Detective Angell, Stanley clearly invoked his right to counsel by saying he did not want to make a statement until his mom brought a lawyer. Detective Angell proceeded to tell him that there was a problem with that because he wasn't

under arrest. Stanley expressed dismay that he wasn't going to be arrested, and Detective Angell asked Stanley directly if he had committed a crime. Stanley responded affirmatively and when Detective Angell asked what crime, Stanley said burglary. Detective Angell then notified Stanley he would be probably be arrested, just not at that moment.

If no probable cause existed when Stanley first began speaking with Detective Angell, it certainly existed when he confessed to the crime of burglary. It is also clear that Stanley became the focus of the investigation by the time Detective Angell asked Stanley if he planned on killing the victim during the robbery. Despite the nature of the interrogation and Stanley's confession to the burglary, he was, to his own dismay, told by Detective Angell that he was not under arrest. However, Stanley was separated from his father, and by this point, prevented from seeing his father. Police conduct during the encounter may escalate the interview to a custodial interrogation. *Dowthitt v. State, 931 S.W. 2nd 244, 255 (Tx.Cr.App.1996).*

In *Ruth v. Texas, 645 S.W.2d 432, 435 (Tx.Cr.App.1979),* the court commented on the importance of whether the defendant is the focus of the investigation:

> Among the other factors which may be considered, one which "has consistently impressed our court [is] whether or not the

5

focus of the investigation has finally centered on the defendant." *Newberry,* supra, at 461; *Ancira,* supra, at 927. Another factor which may be considered is whether there was probable cause to arrest. *Newberry,* supra, at 461; *Ancira,* supra, at 926. On these factors, the officer's testimony is belied by the facts. It is impossible to believe that the officer did not have probable cause to arrest, or that the investigation had not focused on the appellant, after the appellant admitted that he shot the victim, explained his motive, and reenacted the offense. The appellant must have been in custody by that time, but the officer gave no *Miranda* warnings. Instead, he continued to question the appellant about where he got the gun.

The court of appeals failed to consider the underlying fear by Stanley that even though he was told that he was free to leave, immediately after leaving the police substation, he would be arrested. His fears, ultimately, were well-founded. Just a few hours after leaving the Prue Road substation, Stanley was arrested.

What law enforcement has achieved in this case, and likely in many others, is to subvert the protections of *Miranda* and deny suspects due process by allowing the defendants to make incriminating statements—even when they are the clear focus of the investigation—and then arresting them a short time later. The only assurance that Detective Angell made to Stanley was that he wasn't going to arrest him right then. If Stanley had been arrested upon stepping out of the police station, would this have changed the custodial nature of the interrogation? Is it fundamentally significant that four

6

hours passed before the police arrested him at his home? No new information had come to light between the moment Stanley left the police substation and when he was arrested.

Appellant's Motion to Suppress his first statement should have been granted by the trial, and the Fourth Court of Appeals compounded this error in its opinion.

**2. The court of appeals erred in holding that appellant's invocation of counsel was equivocal.**

While the Courts have held that it is not the responsibility of the police to clarify ambiguous or equivocal requests for counsel, there must be consideration for the totality of the circumstances in determining whether a request was unambiguous. *Gobert, 275 S.W.3d 888, 893*. The context to Stanley's request is critical. *Davis, 313 S.W.3d 317, 341.*

In *In Re H.V, 252 S.W. 3d 319, 327 (Tex. 2008)*, the court provides further clarity on this issue concerning the totality of the circumstances. The totality of the circumstances in Stanley's situation is strikingly similar to the facts in *H.V.*, where a sixteen-year-old Bosnian juvenile's statement that he wanted his mother to ask for an attorney was ruled to be an unambiguous invocation of right to counsel. The court of appeals suggests Stanley's case is different because he is an adult and not a juvenile; however, the standard

7

used in *H.V.* is predicated on the ruling in *Davis v. U.S.,* which asserts a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."

Although Dillan Stanley was not a juvenile in the legal sense, he was eighteen years old, living at home with his father, and dependent on his parents for financial support as stated by his mother, Patricia Stanley. (R.R.v.3, p. 20) He did not arrive to the Prue Road police substation by himself. He was accompanied by his father, William Stanley. While being questioned by Detective Angell, he requested to speak his father, and when denied, asked if Detective Angell could speak to his father. Stanley was not a seasoned criminal well acquainted with the criminal justice system, and from the moment he arrived at the Prue Road substation, he demonstrated his reliance on his parents for direction and support. Stanley reported to Detective Angell that his mother would be hiring an attorney. Additionally, Patricia Stanley testified that on at least three occasions she informed the detectives that she would be hiring an attorney for her son. Detective Angell assured the family that Stanley was not going to be immediately arrested and that they would have time to hire an attorney.

In the context of Stanley having already informed Detective Angell his mother would be hiring an attorney, his statement that "My mom told me that I should wait until I have a lawyer present to say anything" should certainly imply not just any attorney, but a hired attorney. If this is construed to be ambiguous even given the context of the situation, Stanley's second statement requesting if there any way Detective Omungo could call Stanley's mom to see if she was bringing a lawyer should certainly be seen as a clear invocation of his right to counsel. Since Stanley by this point was in custody, it was impossible for him to hire a private attorney. As was the case in *H.V.*, the presence of hired counsel during his questioning depended solely on his mother's ability to hire one. Stanley had no income. In *H.V.* the court noted the following regarding the totality of the circumstances:

> But we need not decide in this case whether the court of appeals erred in considering H.V.'s age, as we agree with its ultimate conclusion. It is hard to construe H.V.'s statement that he "wanted his mother to ask for an attorney" as anything other than "an expression of a desire for the assistance of an attorney." This is not a case in which H.V. simply wanted to see his mother; the only reason he said he wanted her was for the purpose of getting him an attorney. If he wanted private counsel, his request would have been technically correct, as his age at least hindered it if it did not prevent him doing so himself.

The trial court should have suppressed Appellant's second statement to Detective Omungo. It is clear based on the standard applied in *H.V.* that Appellant unambiguously invoked his right to counsel. The court of appeals

9

compounded this error by limiting the scope of *H.V.* to juvenile matters,when the basis of the decision was predicated on the United States Supreme Court ruling in *Davis*.

**3. The court of appeals erred in affirming the trial court's denial of the motion to suppress Appellant's statement because Appellant did not knowingly, intelligently, and voluntarily waive his rights under Article 38.22 and *Miranda.***

Incredibly, the court of appeals points to Stanley's questions about his mother obtaining a lawyer as an acknowledgement that he understood his rights. The court then went on to conclude that because Stanley proceeded to offer his statement, that he implicitly waived his rights.

The State incurs the burden to establish a suspect's waiver of rights. *Maryland v. Shatzer, 175 L.Ed 2d 1045, 1052.* Despite what Detective Omungo testified, the DVD video shows no perceptible verbal or physical indication that Stanley understood his rights as they were read to him. What is clear in the trial court's record is that Stanley was confused as to his legal rights when he arrived at the Prue Road police substation and began speaking to Detective Angell. An objective review shows Stanley clearly did

10

not understand why he could not invoke his right to counsel. He related that he did not understand why he was not being arrested after admitting to burglary. He did not understand why he could not wait at the police station until his lawyer arrived.

Given Stanley's youthful age, inexperience in the criminal justice system, the fact that his previous attempts to invoke counsel were denied, and that after attempting to invoke in the second interview, he was presented two options by Detective Omungo, neither of which included asserting his *Miranda* rights,[2] it is certainly reasonable to presume Stanley understood he had no choice but to continue the interview. The totality of these circumstances, which include the defendant's experience, background and conduct are relevant. *See Fare v. Michael C., 442 U.S. 707, 725.* In *Moran v. Burbine, 475 U.S. 412 (1986),* the United States Supreme Court held that the decision to wave Miranda rights must be a free choice with an awareness of the nature of the right being abandoned.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if

---

[2] After Stanley made his request to see if his mother had hired an attorney, Detective replied asked Stanley his age and stated as follows: "Eighteen. Okay. So, you tell me what you'd like to do right now. Do you want to get your story out...your version of the story, or do you want the facts that we have, as we have them, including Eric telling his version of the story. You want that just to be it then? That's up to you."

11

the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

The court of appeals further concluded that Stanely's decision to speak to Detective Omungo effectively waived his *Miranda* rights. Again, the court of appeals failed to consider the totality of the circumstances. When Detective Omungo asked, "What do you want to do," he was not attempting to clarify Stanley's request to contact his mother to see if she had hired an attorney. It is clear from the record that immediately following this question and before Stanley said a word, Detective Omungo presented him with two options as to what he wanted to do. He could make a statement or let the facts stand as they were, which included Eric Ramirez' statement. The presentation of these two options is what prompted Stanley to begin speaking. For Stanley to have completely waived his rights after previously invoking, the Courts have ruled, "[T]he impetus for the remarks must come from the suspect, not from police interrogation or conduct that is the functional equivalent of interrogation." *Martinez v. State,* 275 S.W.3d 29, 35 (Tex. App.-San Antonio 2008, pet. struck).

The totality of the circumstances which include issues of age, experience, education, maturity, etc. has been the standard for determining

the voluntary nature of a statement. *Delao v. State, 235 SW 3d 241.* An objective review of the facts of the case shows Stanley's youth, immaturity, reliance on his parents for support, and lack of understanding of his rights dictated his behavior. When presented with Detective Omungo's ultimatum, which included a belittling reference to Stanley's age but did not reference again his right to counsel, Stanley had no other option but to offer a statement against his will.

It is important to note that Stanley's subsequent statement does not render his prior requests ambiguous. *Smith v. Illinois, 469 U.S. 91, 98 (1984)*

The court of appeals erred in ruling that Stanley's second statement involved an implicit waiver of his *Miranda* rights.

**4.      The court of appeals erred in ruling that Officer Omungo attempted to clarify Appellant's ambiguous request for counsel prior to his second statement.**

In Stanley's post-arrest interview, Detective Omungo read Stanley his *Miranda* rights. Stanley did not immediately waive these rights. While Stanley answered a general question as to why he was there (the murder charge), he immediately responded to questions about the case itself by notifying Detective Omungo that his mother told him not to talk until he had

13

a lawyer present. He then asked to speak if his mother could be called to see if she had hired an attorney.

In *Reed v. Texas, 227 S.W.3d 111 (Tex. App—Houston 2006)* the court noted the following:

> When an accused's invocation is unclear, ambiguous, or equivocal, the interrogating officers are not required to automatically stop the interview. *Lucas, 791 S.W.2d at 46.* They may continue questioning the accused, but only to ascertain whether he wishes to speak to an attorney or continue the questioning without the assistance of counsel. Police may not use such clarification as a guise to encourage, coerce, or intimidate the accused to make a statement. *Jamail v. State, 787 S,W,2d 372, 377 (Tex.Crim.App. 1990).*

Clearly, Detective Omungo's response to Stanley's request for counsel was not intended to clarify what Detective Omungo may have deemed to be an ambiguous request. Instead, he belittled Stanley regarding his age and presented two options for, neither of which included waiting for an attorney to arrive.

In light of the circumstances of the encounter, at the very minimum, Stanley made a request for counsel. Detective Omungo did not make an attempt to clarify this request but continued to question Stanley, encouraging him into making a statement.

The trial court as well as the Fourth Court of Appeals erred in failing to consider previous rulings by the Court of Criminal Appeals regarding law enforcement's failure to clarify ambiguous invocations for counsel.

CONCLUSION AND PRAYER

This Court should grant review, request additional briefing, and render the judgment that the court of appeals should have rendered. The Court should reverse the judgment of the lower courts and render a judgment of acquittal or, alternatively, reverse and remand for further proceedings below.

Respectfully Submitted

/s/Anthony B. Cantrell
Anthony B. Cantrell
SBN: 03763180
111 Soledad, Suite 1200
San Antonio, TX 78501
Telephone: 210-490-1207
Facsimile: 210-209-1482
cantrelllaw@sbcglobal.net
*Counsel for Appellant*

15

# CERTIFICATE OF COMPLIANCE AND DELIVERY

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), because it contains 3,510 words, excluding the parts exempted by Rule 9.4. On March 30, 2015, a true and correct copy of the above and forgoing "Petition for Discretionary Review" was transmitted via electronic mail (eMail) to appellate counsel of record for the State of Texas and to Todd Winslow, State's Prosecuting Attorney.

/s/ Anthony B. Cantrell
Anthony B. Cantrell

# APPENDIX



# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

Nos. 04-13-00663-CR &
04-13-00713-CR[1]

Dillan William **STANLEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CR-8100B
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
            Karen Angelini, Justice
            Marialyn Barnard, Justice

Delivered and Filed: January 28, 2015

AFFIRMED

After the trial court denied appellant Dillan William Stanley's motion to suppress, Stanley pled guilty to the offense of murder. On appeal, Stanley contends the trial court erred in denying his motion to suppress the oral statements he made to law enforcement before and after his arrest. We affirm the trial court's judgment.

---

[1] After judgment, both appellant's trial counsel and his current appellate counsel filed notices of appeal. Based on the separate notices of appeal, this court inadvertently docketed this single appeal as two separate appeals, assigning the first notice of appeal number 04-13-00663-CR, and then assigning the second notice of appeal number 04-13-00713-CR. It is clear there is but one judgment and one conviction for a single offense in this case. Accordingly, we dismiss appeal number 04-13-00713-CR because it is merely duplicative of the first filed appeal.

## BACKGROUND

Stanley was arrested for the capital murder of Gilbert Fernandez. Prior to trial, Stanley filed a motion to suppress oral statements he made to San Antonio detectives, Timm Angell and Omar Omungo. At the hearing on the motion, the State presented both detectives as witnesses. Additionally, the trial court admitted into evidence an audio recording of Stanley's interview with Detective Angell and a DVD recording of Stanley's post-arrest interview with Detective Omungo.

At the hearing, Detective Angell testified he was working at the main police station when Detective Omungo received a phone call advising him that two men, Stanley and Eric Ramirez, were at the Prue Road police substation. Stanley and Ramirez wanted to talk about a murder. Detective Angell stated he and Detective Omungo went to the substation to question the men. When they arrived, the detectives questioned the men separately.

Detective Angell testified he found Stanley seated with another officer at a desk located behind the service counter. Stanley was not in handcuffs. According to Detective Angell, he introduced himself to Stanley and discovered Stanley, who was eighteen-years-old, was at the substation to turn himself in for a robbery. Detective Angell stated he told Stanley he was not under arrest and he could leave whenever he wanted. According to Detective Angell, Stanley stated he did not understand why he was not under arrest. Detective Angell advised Stanley that he might be arrested later, but at this time, he was not under arrest. Stanley then told Detective Angell that he and Ramirez robbed Fernandez and during the robbery, Ramirez killed Fernandez by hitting him with a bat. The conversation lasted approximately thirty-six minutes; thereafter, Stanley left with his parents.

Detective Omungo testified he conferred with Detective Angell about the conversation with Stanley. Thereafter, Detective Omungo prepared a warrant for Stanley's arrest. The police

arrested Stanley the next morning and took him to a police substation where Detective Omungo interviewed him.

Detective Omungo testified that when he arrived at the substation, Stanley was in an interview room. Detective Omungo also testified he removed Stanley's handcuffs, introduced himself, and asked Stanley if he was "okay." Thereafter, the detective read Stanley his *Miranda* rights. According to Detective Omungo, after he asked Stanley if he understood his rights, Stanley nodded affirmatively. Detective Omungo then asked Stanley to share his side of the story. Stanley replied, stating his mother had told him to wait for a lawyer. Detective Omungo testified he told Stanley he could not force him to talk. Stanley then asked if he could call his mother to see if she was obtaining a lawyer. Detective Omungo testified he told Stanley he could call his mother if he wanted or he could talk to him about what happened. Stanley remained quiet for a moment and then proceeded to tell Detective Omungo how he and Ramirez robbed Fernandez and during the robbery, Ramirez murdered Fernandez.

Stanley was ultimately indicted for the offense of capital murder. Before trial, Stanley sought to suppress the statements he made to the two detectives. After the suppression hearing, the trial court denied Stanley's motion to suppress, making oral findings of fact. The trial court found Stanley's first statement — the statement he made to Detective Angell — was voluntary. The trial court further found Stanley waived his *Miranda* rights and failed to invoke his right to counsel when he made his post-arrest statement to Detective Omungo. After the trial court denied his motion to suppress, Stanley and the State entered into a plea agreement whereby Stanley pled guilty to the lesser offense of murder. Stanley preserved his right to appeal the denial of his motion to suppress. After judgment was rendered, Stanley perfected this appeal.

### ANALYSIS

In two issues on appeal, Stanley contends the trial court erred by overruling his motion to suppress the oral statements he made during his interviews with Detective Angell and Detective Omungo. Specifically, Stanley argues the statement he made to Detective Angell was the product of a custodial interrogation and he was not given *Miranda* warnings. As to his post-arrest statement to Detective Omungo, Stanley contends the statement was involuntary and obtained in violation of his right to counsel.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion under a bifurcated standard. *Hernandez v. State*, 387 S.W.3d 881, 884 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Under a bifurcated standard, we defer to the trial court's determination of historical facts and witnesses' credibility, but we review the trial court's application of the law to the facts under a de novo standard. *Hodson v. State*, 350 S.W.3d 169, 173 (Tex. App.—San Antonio 2011, pet. ref'd) (citing *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000)). If the trial court makes express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the factual findings. *Valtierra*, 310 S.W.3d at 447. Accordingly, we will uphold the trial court's ruling if that ruling is reasonably supported by the record and is correct under any theory of law applicable to the case. *Hernandez*, 387 S.W.3d at 885; *Valtierra*, 310 S.W.3d at 447.

### *Application*

#### 1. *Pre-Arrest Statement to Detective Angell*

As stated above, Stanley contends the trial court erred by overruling his motion to suppress the statement he made to Detective Angell. He contends the statement was the product of a

-4-

custodial interrogation and he was not given *Miranda* warnings. Therefore, he asserts his statement was involuntary.

As this court held in *Hines v. State*, law enforcement must, under *Miranda v. Arizona*, warn suspects of certain constitutional rights prior to a custodial interrogation. 383 S.W.3d 615, 621 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 478 (1966); *Hodson State*, 350 S.W.3d 169, 173 (Tex. App.—San Antonio 2011, pet. ref'd)). Additionally, law enforcement must abide by the provisions of Article 38.22 of the Texas Code of Criminal Procedure with regard to statements made during a custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2011). Article 38.22 provides that an oral statement is admissible against a defendant if the defendant was given certain warnings prior to making the statement, the warnings and the statement were electronically recorded, and the defendant "knowingly, intelligently, and voluntarily" waived these rights. *Id.* art. 38.22, §§ 2(a), 3(a)(1)-(2). However, warnings pursuant to *Miranda* and Article 38.22 are necessary only when a suspect is in custody. *Hines*, 383 S.W.3d at 621 (citing *Miranda*, 384 U.S. at 444; *Hodson*, 350 S.W.3d at 173). "'A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.'" *Hodson*, 350 S.W.3d at 173–74 (quoting *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)).

According to the Texas Court of Criminal Appeals, four situations constitute situations in which a defendant may be in custody: (1) when a suspect is physically deprived of his freedom of action in any significant way; (2) when a police officer tells a suspect he cannot leave; (3) when a police officer creates a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and a police officer does not tell a suspect he is free to leave. *Hodson*, 350 S.W.3d at 174. It is the

objective circumstances, not the subjective views of either the police officer or the defendant, that determine whether the defendant was subject to custodial interrogation. *Hines*, 383 S.W.3d at 621 (citing *Dowthitt*, 931 S.W.2d at 254); *Garza v. State*, 34 S.W.3d 591, 593 (Tex. App.—San Antonio 2000, pet. ref'd).

The State has no burden to show it complied with the mandates of *Miranda* or Article 38.22 "*unless* and *until* the defendant proves that the statements he wishes to exclude were the product of custodial interrogation." *Hines*, 383 S.W.3d at 621 (quoting *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (quoting *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)). Accordingly, Stanley had the burden to establish he was in custody before the State was required to show compliance with *Miranda* or Article 38.22. *See id.* We hold tStanley failed to meet this burden with regard to the statement made to Detective Angell.

A determination as to whether Stanley was in custody when he made the complained of statement to Detective Angell presents a mixed question of law and fact. *See Herrera v. State*, 241 S.W.3d at 526. Therefore, as to the portion of the custody issue that turns on witness credibility, we will defer to the trial court. *See Hodson*, 350 S.W.3d at 173. However, we will review the court's application of the law to the facts under a de novo standard. *See id.*

Stanley contends the interrogation by Detective Angell was custodial because: (1) Stanley provided the police with a damaging statement that established probable cause for his arrest, and (2) he was not allowed to speak to his family, who were in the process of obtaining an attorney on his behalf. We disagree and conclude the conversation between Detective Angell and Stanley did not rise to the level of a custodial interrogation.

Although a defendant's damaging admission with regard to a crime may be the key factor in establishing probable cause for his arrest, merely making a damaging statement is not enough to turn a situation into a custodial interrogation. *See Saenz v. State*, 411 S.W.3d 488, 497 (Tex.

- 6 -

Crim. App. 2013) (holding officer's knowledge of probable cause to arrest does not by itself create situation classified as custodial interrogation); *Trejos v. State*, 243 S.W.3d 30, 46–47 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd) ("Although a statement made by a person is sufficient to establish probable cause, the statement is not custodial if the court determines based on other facts that the person was not under arrest."). Instead, custody is established if the manifestation of probable cause *in combination with other factors* would lead a reasonable person to believe he is under restraint to the degree associated with a formal arrest. *Saenz*, 411 S.W.3d at 496.

In this case, the trial court's oral findings of fact support the trial court's conclusion that despite his admissions, Stanley was not in custody during his interview with Detective Angell. First, the evidence establishes, and the trial court found, that Stanley voluntarily went to the police substation to provide police with his version of the robbery and killing of Fernandez. *See Estrada v. State*, 313 S.W.3d 274, 294-95 (Tex. Crim. App. 2010) (holding that defendant was not in custody when he went to police station voluntarily, was told he was free to leave, and stayed willingly for five-hour interview); *White v. State*, 395 S.W.3d 828, 836 (Tex. App.—Fort Worth 2013, no pet.) (holding that defendant was not in custody when he voluntarily went to police station for one-hour interview, despite making pivotal admission). Second, Detective Angell testified he repeatedly told Stanley he was not under arrest, and the trial court subsequently found that although Stanley may have thought his admission would cause him to be arrested, he was informed several times he was not under arrest. *See Estrada*, 313 S.W.3d at 295 (holding reasonable person would believe he was free to leave when told by police several times he was free to leave even if defendant states he wants to leave but voluntarily stays); *Garcia v. State*, 106 S.W.3d 854, 858 (Tex. App.— Houston [1st Dist.] 2003, pet. ref'd) (holding that defendant was not in custody when he voluntarily went to police station, and after he was told he could leave, he gave damaging statement). In addition, the record shows Stanley was questioned by Detective Angell for approximately thirty-

six minutes in an open area, was not physically prevented from leaving the substation, was allowed to speak with his parents when he asked to speak to them, and was permitted to leave the substation with his parents.

Stanley points out that Detective Angell ignored his repeated requests to speak to his family regarding an attorney. However, Detective Angell testified he told Stanley he was free to leave when Stanley expressed concern about talking with an attorney. Detective Angell also testified that when Stanley asked to speak to his father, Detective Angell took Stanley to his father, who was seated twenty yards away.

Applying the applicable legal standard, we must give almost total deference to the trial court's custody determination when questions of historical fact turn on witnesses' credibility or demeanor. Here, we hold Detective Angell's testimony provides sufficient evidence to support the trial court's finding that Stanley was not in custody.

Under these circumstances, we hold a reasonable person would not believe he was under restraint to the degree associated with an arrest. We therefore conclude Stanley failed to meet his burden to establish he was in custody when he made his oral statement to Detective Angell. Because Stanley was not in custody, Detective Angell was not required to give Stanley warnings pursuant to *Miranda* or Article 38.22 prior to or during the interview. Accordingly, we hold the trial court did not err in denying the motion to suppress.

*2. Post Arrest Statement to Detective Omungo*

Stanley next contends the trial court erred in denying his motion to suppress with regard to his post-arrest statement to Detective Omungo. Stanley contends his post-arrest statement was involuntary because he did not fully understand the *Miranda* warnings read to him, and he did not waive his rights after the warnings were read. Stanley also claims he invoked his right to counsel

-8-

before giving any statement to Detective Omungo, but Detective Omungo ignored his request for counsel. We will address each of these arguments separately.

*Waiver*

As noted above, Article 38.22 of the Code of Criminal Procedure provides that an oral statement made by an accused as a result of custodial interrogation shall not be admissible against him in a criminal proceeding unless the statement was recorded and, prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. TEX. CODE CRIM. PROC. art. 38.22 § 3. The Article 38.22 warning must inform a defendant that:

> (1) [H]e has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
> (2) any statement he makes may be used as evidence against him in court;
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
> (5) he has the right to terminate the interview at any time[.]

TEX. CODE CRIM. PROC. art. 38.22, § 2. The State bears the burden to show by a preponderance of the evidence that the accused knowingly, intentionally, and voluntarily waived his rights. *See Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (citing *Miranda*, 384 U.S. at 444).

To be valid, a waiver of rights must be made with the full awareness of not only the nature of the rights being abandoned, but also the consequences of the decision to abandon those rights. *Joseph*, 309 S.W.3d at 25. To be voluntary, a waiver must be the product of a free and deliberate choice, not a result of coercion, intimidation or deception. *Id.* However, a waiver does not need to assume a particular form and can be inferred by the actions and words of the accused. *Id.* at 24 (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)); *see also Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988) (highlighting that waiver is not required to be written or orally

expressed). In other words, a waiver may be presumed upon a showing that an individual was given proper warnings, acted in a manner that indicated he fully understood his rights and the consequences of waiving such rights and made an uncoerced statement. *Berghuis v. Thompkins*, 560 U.S. 370, 384–85 (2010); *Joseph*, 309 S.W.2d at 25. To determine if an accused validly waived his rights, we must consider the totality of the circumstances surrounding the interrogation. *See Joseph*, 309 S.W.2d at 25–26.

The DVD recording of the post-arrest statement shows Detective Omungo read Stanley his rights and asked Stanley if he understood his rights. Stanley remained silent, but appeared to nod his head affirmatively. Detective Omungo confirmed Stanley's action by responding, "Yes." At the suppression hearing, Detective Omungo testified he asked Stanley if he understood his rights, and Stanley indicated he did. Furthermore, Detective Omungo testified he did not have any concerns about Stanley's mental capacity or his ability to understand the process. And, it is undisputed that after the detective read the warnings to Stanley, Stanley continued with the interview.

Stanley counters, arguing he did not affirmatively nod, and therefore, he did not expressly waive his rights. Stanley also contends he did not act in any way to show an affirmative waiver of his rights. The trial court found that although Stanley may not have clearly nodded, there was no showing or indication that Stanley did not want to proceed with the interview, and therefore, he waived his rights. We agree. As stated above, an express waiver of rights is not required. *See Joseph*, 309 S.W.2d at 24. It is within the trial court's discretion to rely upon an implied waiver when the totality of the circumstances, as reflected by the DVD recording and Detective Omungo's testimony, supports it. *Id.* at 25–26. There is nothing in the record to lead this court to conclude Stanley did not understand his rights. Although Stanley did not specifically state that he wished to waive his rights or that he understood his rights, Stanley acted in a manner to show he

- 10 -

understood his rights when he proceeded to speak to Detective Omungo and gave no indication he wished to remain silent. We therefore conclude the totality of the circumstances supports the trial court's reliance upon appellant's implied waiver of his rights.

*Invocation of Right to Counsel*

Stanley next contends that even if he did initially waive his rights, he later invoked his right to counsel when he asked to speak to his mother about an attorney before providing any statement to Detective Omungo. We disagree.

When an accused requests to speak to an attorney, a police officer must stop asking the accused questions until he is provided with an attorney. *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010); *State v. Gobert*, 275 S.W.3d, 888, 893 (Tex. Crim. App. 2009). However, a request for counsel must be unambiguous; in other words, it must be sufficiently clear that a reasonable police officer would understand the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459 (1994); *Davis*, 313 S.W.3d at 339; *Dalton v. State*, 248 S.W.3d 866, 872 (Tex. Crim. App. 2008). If an accused makes an ambiguous or equivocal statement, a police officer is under no obligation to ask the accused questions to clarify whether he really wants an attorney. *Davis*, 313 S.W.3d at 339; *Dalton*, 248 S.W.3d at 872.

Whether an accused actually invoked his right to counsel is an objective inquiry. *Davis*, 313 S.W.3d at 339. To determine if an accused invoked his right to counsel, we look at the totality of the circumstances surrounding the interrogation in combination with the accused's statement. *Dalton*, 248 S.W.3d at 872–73.

The DVD recording shows Stanley told Detective Omungo that his mother told him not to speak to anyone unless he had an attorney. Detective Omungo informed eighteen-year-old Stanley that it was up to him whether he wanted to discuss what happened. Stanley then asked if he could call his mother to ask if she was bringing an attorney, and Detective Omungo told Stanley he could

- 11 -

call his mother, but he was old enough to decide if he wanted to speak to the detective. Moreover, at the suppression hearing, Detective Omungo testified he told Stanley he was an adult and could make the decision on his own whether to speak to the detective without an attorney. Stanley paused, and Detective Omungo asked him what he would like to do. Stanley then proceeded to provide Detective Omungo with a statement regarding the robbery and murder.

After watching the DVD recording and hearing the testimony, the trial court found that Stanley did not clearly invoke his right to counsel. Rather, Stanley considered his options and decided to move forward and provide Detective Omungo a statement. We agree.

When considering the totality of the circumstances, we hold Stanley's request to speak to his mother with regard to her obtaining an attorney for him was not a clear invocation of his right to counsel. Texas case law holds that an invocation of the right to counsel must be clear and unambiguous. *See, e.g., Davis*, 313 S.W.3d at 341 (holding that defendant's statement "Should I have an attorney?" was not clear request for counsel); *Dalton*, 248 S.W.3d at 873 (holding that defendant's statement to officer to tell his friends to get lawyer was not direct, unequivocal request for attorney); *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that "Can I wait until my lawyer gets here?" was not clear and unambiguous invocation of right to counsel).

Here, Detective Omungo attempted to clarify Stanley's statement by asking him what he wanted to do. Contrary to the situation presented in *In re H.V.*, where a Bosnian juvenile's statement that he "wanted his mother to ask for an attorney" was construed as an unambiguous request for an attorney under the totality of the circumstances, this case involves an adult requesting to ask his mother whether she hired an attorney. *See* 252 S.W.3d 319, 327 (Tex. 2008). Stanley's ambiguous question about calling his mother to inquire about the status of counsel was followed by his unambiguous decision to continue to discuss the situation with Detective Omungo.

Accordingly, considering the totality of the circumstances from an objective viewpoint, we conclude the trial court did not err in concluding Stanley did not invoke his right to counsel. If anything, Stanley's request to speak to his mother about an attorney confirms Stanley understood his rights as well as the consequences of waiving such rights, and therefore, made a valid waiver. Consequently, we hold the trial court did not err in denying the motion to suppress Stanley's post-arrest statement to Detective Omungo.

## CONCLUSION

Based on the foregoing, we conclude the trial court did not err in denying Stanley's motion to suppress. Accordingly, we overrule Stanley's complaints and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish